# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                          CRIMINAL ACTION NO. 3:19-00200

FRANKLIN DELANO CHAFIN

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Franklin Delano Chafin's ("Defendant") Motion to Suppress Evidence. ECF No. 32. The Government filed a Response in Opposition. ECF No. 35. The Court held a hearing on Defendant's Motion on September 9, 2021, which was continued to September 14, 2021. For the reasons set forth below, the Court **DENIES** the Motion.

### I. BACKGROUND

Defendant's motion arises out of an interaction he had with Officer Boyer (Ofc. Boyer) on May 18, 2019, at the intersection of 20th Street and 10th Ave. The Court relies on the testimony that Ofc. Boyer offered at the Motion hearing. At around 7:01 PM on the day in question, Ofc. Boyer was driving his patrol vehicle and saw Defendant riding his bicycle with a drawstring bag on his back. Ofc. Boyer was familiar with Defendant and had offered to help him in the past. Ofc. Boyer called to defendant saying "Dale, let's talk," to which Defendant replied "Okay. What's up?" As Officer Boyer exited his vehicle, he noticed that Defendant placed his hand into his left pocket. Ofc. Boyer requested that Defendant remove his hands from his pocket. Defendant became visibly agitated and removed his hands from his pocket in an exaggerated motion. When Ofc. Boyer asked Defendant what was wrong, Defendant responded

"Boyer, you're going to get me locked up.  I'm on probation."  Ofc. Boyer asked Defendant why he would get in trouble.  In response, Defendant admitted to having needles in his pocket and placed his left hand back into his front left pocket, despite Ofc. Boyer's request that he not do so.

It was at this time that Ofc. Boyer moved to restrain Defendant.  Ofc. Boyer testified that needles are often used for illegal drug use and that needles are potentially dangerous.  Ofc. Donoho arrived on the scene and aided Ofc. Boyer in detaining Defendant.  While Defendant told Ofc. Boyer he could retrieve the needles from his pocket, Defendant's continued movement ultimately led to the Ofcs. placing Defendant's hands behind his back in handcuffs.  Ofc. Boyer then conducted a pat-down search of Defendant's pockets—first the left pocket, where he felt what he knew to be a cell phone, and then the right pocket, where he felt the items he knew to be needles, which he removed.

Defendant continued to jerk his body about while Ofc. Boyer attempted to calm him down. Defendant then offered to talk with Ofc. Boyer in the patrol vehicle.  When Ofc. Boyer told Defendant that he could not wear his bag into the patrol vehicle, Defendant became more agitated and began to shout.  He then admitted that there was a firearm in the drawstring bag on his back.  Ofc. Boyer cut the straps off the bag to remove it from Defendant's back and searched the bag, recovering a loaded silver .357 Magnum Ruger revolver with five live rounds and additional ammunition in the bag.  Ofc. Boyer, familiar with Defendant's criminal history, confirmed that Defendant was a convicted felon and arrested him for felon in possession of a firearm.

## II. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…"  U.S. CONST. amend.

IV. But, not all interactions between police officers and citizens constitute seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). There are such occasions when officers and citizens engage in voluntary and consensual encounters. The consensual nature of an interaction is determined by an examination of the circumstances of the encounter. *United States. v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012). Such encounters are considered voluntary and consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). An officer simply requesting to have a conversation with a citizen falls into this category of voluntary and consensual. *See id.* Further, an officer's mere questioning of a citizen does not push the encounter beyond consensual. *Jones*, 678 F.3d at 299. Accordingly, there is no requisite level of suspicion for these encounters. *Id.* The voluntary nature of such interaction only ends once "a reasonable person would have believed he was not free to leave." *Hodari D.*, 499 U.S. at 628.

The interaction between Officer Boyer and Defendant on May 18, 2019, began consensually. On the day in question at the intersection of 20th Street and 10th Ave around 7:01 PM, Ofc. Boyer, while driving his patrol vehicle, saw Defendant riding his bicycle. Ofc. Boyer called to Defendant and said "Dale, let's talk," to which Defendant replied "Okay. What's up?" At this point, Defendant was free to refuse to chat with the officer and continue on his way. However, Defendant voluntarily agreed to speak with Ofc. Boyer of his own volition.

The consensual nature of the interaction did not end when Ofc. Boyer asked Defendant to remove his hand from his pocket. *See United States v. Black*, 525 F.3d 359, 364 (4th Cir. 2008) ("Police may question citizens without implicating Fourth Amendment protections…. Indeed, officers remain free to seek cooperation from citizens on the street without being called upon to

articulate any level of suspicion or justification for their encounters." (quoting *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000)). Ofc. Boyer's request did not restrict Defendant's movement or imply that Defendant was not free to leave the encounter. Defendant was not seized at this time.

It was under these circumstances when Defendant made admissions to Ofc. Boyer that raised a reasonable suspicion that Defendant was dangerous. Defendant removed his hands from his pocket in an exaggerated manner and became visibly agitated. When Ofc. Boyer asked Defendant what was wrong, Defendant expressed worry that Ofc. Boyer was going to get him "locked up" and he also indicated that he was on probation. Ofc. Boyer asked him why he would get in trouble, and Defendant admitted that he had needles in his pocket. Defendant then moved to place his hand back into his pocket—after Ofc. Boyer had requested he not do so.

Police may lawfully conduct limited pat-down search of a person for weapons or contraband if there is a reasonable suspicion that the person may be armed and dangerous. *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013); *United States v. Raymond*, 152 F.3d 309, 312 (4th Cir. 1998) ("Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed."). Courts evaluate a reasonable suspicion determination based on a "totality of the circumstances" approach. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted); *Raymond*, 152 F.3d at 312. This is an objective evaluation. *Raymond*, 152 F.3d at 312. The officer does not have to be "absolutely certain" that the person is armed, but rather, the issue is whether a "reasonably prudent man" in similar circumstances would likewise be worried for his safety. *United States v. Mitchem*, No. 5:20-cr-00032, 2021 WL 2621321, at *3 (S.D.W. Va. June 25, 2021) (quoting *Terry*, 392 U.S. at 27).

Further, an officer is permitted to detain a person by placing the person in handcuffs, in the interest of officer safety, once there is a reasonable suspicion that the person may be dangerous. *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007) ("handcuffing a suspect…does not necessarily elevate a lawful stop into a custodial arrest" (quoting *United States v. Leshuk*, 65 F.3d 1105, 1109–10 (4th Cir. 1995)); *United States v. Ruffin*, 814 F. App'x 741, 749 (4th Cir. 2020) ("The reasonableness of handcuffing a suspect during a *Terry* stop depends on whether doing so is necessary to maintain the status quo and protect officer safety." (internal quotation marks omitted)).

Here, Defendant's admission of possessing needles in his pocket, his repeated attempt to access the pocket despite being instructed not to by Ofc. Boyer, his rising agitation level, and his fear of getting locked up serve as the basis for Ofc. Boyer's reasonable suspicion that Defendant could be dangerous. As there is the potential for an officer to be stuck by a needle, which could result in the spread of intravenous diseases, needles plainly pose a potential threat to officer safety. *See United States v. Stearns*, 3:04-00083-05, 3:04-00083-06, 2004 WL 7333226, at *2 (S.D.W. Va. Aug. 25, 2004) ("A needle is both drug paraphernalia and a dangerous item."). Ofc. Boyer had the requisite reasonable suspicion to conduct the pat-down of Defendant to retrieve the needles.

It could also be argued that Ofc. Boyer had probable cause to believe that Defendant had or was committing a crime. An officer can make a warrantless arrest of a citizen upon a finding of probable cause that a crime is occurring or has occurred. *Illinios v. Gates*, 462 U.S. 213, 230–31 (1983); *Virginia v. Moore*, 553 U.S. 164, 176–78 (2008). This is based on a totality of the circumstances analysis. *Gates*, 462 U.S. at 230–31. "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy

information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Section 553.18(a) of the Huntington Municipal Code prohibits the possession of any items of drug paraphernalia. ("It shall be unlawful for any person to possess, produce or market for sale any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with 'controlled substances.'" HUNTINGTON MUN. CODE § 533.18(a)). The code further defines paraphernalia as "any legitimate equipment, product, or material that is modified for making, using, or concealing illegal drugs." *Id.* at § 533.18(b).

Although Defendant argues otherwise, there is no reason why Defendant would fear getting locked up had he possessed the needles for a legal purpose. Defendant's admissions about his possession of the needles and his concern for getting locked up could provide sufficient basis for probable cause that he was violating Huntington Municipal Code § 533.18(a). Therefore, one could argue that Ofc. Boyer had the requisite probable cause to arrest Defendant. This arrest would allow him to search Defendant's pocket incident to his arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979) (finding that once a defendant is lawfully arrested, a police officer is permitted to conduct a search incident to the arrest without violating the Fourth Amendment). Either the reasonable suspicion analysis or the probable cause analysis would justify Ofc. Boyer's pat-down of Defendant and the seizure of the needles.

Even assuming that Defendant was not arrested at the time of his detainment, the reasonable suspicion then arose to justify the search of his drawstring bag. When Defendant was detained, he agreed to speak with Ofc. Boyer in the Ofc.'s patrol vehicle. When he was informed that he would have to remove his bag before entering the vehicle, Defendant became

increasingly agitated and told Ofc. Boyer that there was a gun in the bag. This admission, and Defendant's increased agitation level, supplied to Ofc. Boyer the reasonable suspicion that defendant was armed and potentially dangerous. The bag in question was a drawstring bag, made of a lightweight fabric, and cinched at the top by strings which serve as the straps to the bag. Although the contents of the bag can only be accessed by pulling it apart at the top, the lightweight material of the bag itself posed the risk of the gun being manipulated through the fabric. The gun contained in the bag was close to Defendant's hands, which were behind his back—this posed a reasonable risk of officer safety. The knowledge of the possession of the gun and the proximity of the gun to Defendant's hands justified the removal and search of the bag.

It is also the case that Ofc. Boyer had probable cause to search the bag. Ofc. Boyer was familiar with Defendant and knew of his criminal history. Once Defendant admitted that he was in possession of a firearm, Ofc. Boyer had the probable cause to arrest Defendant for felon in possession of a firearm. Ofc. Boyer was then permitted to search the bag as a search incident to arrest. *DeFillippo*, 443 U.S. at 35; *United States v. Currence*, 446 F.3d 554, 557 (4th Cir. 2006) (finding that the scope of searches incident to arrest are generally defined by the immediate area, consisting of the arrestee's person and the area within their "immediate control").

Ultimately, whether under a reasonable suspicion analysis or a probable cause analysis, Ofc. Boyer was lawfully authorized to search Defendant's bag and seize the firearm.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion, ECF No. 32.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: September 15, 2021

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE